# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEXTER LAMAR WILLIAMS,

       Defendant-Appellant.

UNPUBLISHED
February 20, 2018

No. 335401
Wayne Circuit Court
LC No. 16-001559-01-FC

Before: SAWYER, P.J., and MURRAY and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317,[1] and disinterment, mutilation, defacement, or carrying away of a human body (mutilation of a human body), MCL 750.160. The trial court sentenced defendant to 50 to 80 years' imprisonment for his second-degree murder conviction, and 6 to 10 years' imprisonment for his mutilation of a human body conviction. We affirm.

This case arises from the death of the victim and the subsequent mutilation of her body by defendant. Defendant was arrested after police officers were dispatched to the victim's apartment after the victim's employer requested a welfare check on the victim due to her absence at work. The police officers noticed that the victim's car was outside her apartment, and when they looked into one of the apartment's windows they saw a red stain with white foam in the hallway. One of the police officers subsequently saw defendant inside the apartment, and they proceeded to have a conversation at the apartment door. Defendant claimed that he was inside the apartment to retrieve his personal belongings because he and the victim had just broken up; however, he refused to let the police officers inside the apartment. He explained his refusal on the basis that there was a "sick dog" inside. After one of the police officers shined his flashlight on defendant's clothing, the police officer noticed that defendant's pants and shirt were covered in red stains.

---

[1] Defendant was charged with first-degree murder, MCL 750.316, however, the jury convicted defendant of second-degree murder.

Ultimately, defendant was handcuffed and placed in a police patrol car while the police searched the apartment. The police discovered a severed human finger inside the apartment's bedroom. Subsequently they discovered the victim's body covered in a comforter in a common storage area for the apartment building and a human leg protruding from a blue plastic container in the apartment's kitchen.

The inside of the patrol car that defendant was placed in was equipped with active video and audio recording equipment. While he was inside the patrol car, defendant was recorded saying: "I swear I should have just never came back. I should have never came back. F**k. Well, three meals a day. Son of a b***h. They caught me that fast. I should have never walked into that f****n' [sic] house. Yep. Yep."

Defendant first contends that he was denied the effective assistance of counsel. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or a *Ginther*[2] hearing to develop a record to support the claim. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant filed a postjudgment motion for an evidentiary hearing and a new trial in the trial court, however, the trial court denied defendant's motion.

Thus, "because the trial court did not hold an evidentiary hearing, our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), citing *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987). See also *People v Fonville*, 291 Mich App 363, 382-383; 804 NW2d 878 (2011), citing *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) (where this Court stated that, absent a hearing, this Court's review of counsel's performance "is limited to errors apparent on the record," in the context of an appeal from a denial of a motion for relief from judgment where a claim of ineffective assistance of counsel was raised). The record on appeal "consists of 'the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced.' " *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014), quoting MCR 7.210(A)(1).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015), citing *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). " 'A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel.' " *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011), quoting *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). This Court reviews the trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. *Trakhtenberg*, 493 Mich at 47. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289, citing *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-2-

This Court evaluates claims of ineffective assistance of counsel using the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57 (1999), citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). "A defendant seeking relief for ineffective assistance in this context must meet *Strickland's* familiar two-pronged standard by showing (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Douglas*, 496 Mich at 592, citing *Hoag*, 460 Mich at 6.

"Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Generally, the "failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. Similarly, [a] failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citations omitted). "To show that defense counsel's performance was objectively unreasonable, the defendant must overcome the strong presumption that defense counsel's decisions constituted sound trial strategy. This Court will not substitute its judgment for that of defense counsel or review decisions with the benefit of hindsight." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012) (citations omitted). A defendant's trial counsel is also presumed to be effective, and a "defendant bears a heavy burden of proving otherwise." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (quotation marks and citation omitted).

Defendant contends that he was denied the effective assistance of counsel during trial because his trial counsel: (1) failed to investigate his case, (2) failed to object to prosecutorial misconduct during trial, (3) failed to object to inadmissible evidence, (4) failed to plan a trial strategy with defendant, (5) failed to call witnesses, and (6) generally rendered deficient representation. Specifically, defendant contends that "it was unacceptable to fail to plan an effective trial strategy with [defendant] and to call his witnesses." Defendant's contentions are without merit.

Defendant's contentions are based on an affidavit authored by defendant that was attached to defendant's postjudgment motion for an evidentiary hearing and new trial in the trial court. However, defendant admits in his brief on appeal that his affidavit "was somewhat general." In fact, in defendant's brief on appeal only two of the preceding six contentions are advanced by any supporting argument: his trial counsel's failure to call "his" witnesses, and his trial counsel's generally deficient trial strategy. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority." *People v Clark*, 315 Mich App 219, 234; 888 NW2d 309 (2016) (quotation marks and citation omitted). Therefore, defendant has abandoned the contentions he raised but did not support with any authority or supporting argument in his brief on appeal.

Of defendant's remaining contentions, defendant argues that his trial counsel was defective for failing to call defendant's witnesses. However, defendant does not identify any witnesses that his trial counsel should have called, nor has he identified any substantial defense of which he was deprived. Therefore, defendant has failed to carry his burden to demonstrate any error on part of trial counsel in this regard.

Similarly, defendant contends that his trial counsel was generally deficient in terms of trial strategy despite the fact he was convicted of the lesser offense of second-degree murder, but the only support he provides for this argument is his statement that an evidentiary hearing is needed to further factually develop his claims. As defendant's motion for an evidentiary hearing was already denied in the trial court, this Court's review is limited to mistakes that are apparent from the record. Therefore, defendant has not only failed to identify any mistakes from the record, but he has entirely failed to rebut the strong presumption that his trial counsel employed sound trial strategy and that she was effective.

Defendant also contends that his trial counsel was ineffective for failing to move for the suppression of the video recording of the statements he made while he was inside a Redford Township Police Department patrol car on the specific ground that those statements were the product of an illegal warrantless search of the victim's apartment. Defendant's contention is without merit.

"The Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution protect against *unreasonable* searches and seizures." *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). "Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *Id.*, citing *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). "[E]vidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993) (citation omitted). "Thus, in order to show that a search was legal, the police must show either that they had a warrant, or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993).

The "emergency-aid exception to the warrant requirement allows police officers to enter a dwelling without a warrant under circumstances in which they reasonably believe, based on specific, articulable facts, that some person within is in need of immediate aid." *People v Lemons*, 299 Mich App 541, 545-546; 830 NW2d 794 (2013) (quotation marks and citations omitted). "After entering the dwelling, the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Id.* at 546 (quotation marks and citation omitted). "However, the entry must be limited to the justification therefor, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance." *Id.* (quotation marks and citation omitted).

The warrantless search of the victim's apartment fell within the emergency-aid exception. Redford Township Police Sergeant Paul Lawrence testified that he and Redford Township Police Officer Adam Kubrak were sent to the victim's apartment because there was a "welfare check" request for the victim that had been called in by the victim's "boss" because the victim "hadn't been at work that night." Once he and Officer Kubrak arrived, they noticed the victim's car was

-4-

parked outside the apartment building, and they looked into the apartment's window and saw a red stain with white foam in the apartment's hallway. They also saw that the lights were on inside the apartment, and they heard music being played inside the apartment. Eventually, Sergeant Lawrence saw defendant inside the apartment, and he ultimately spoke with defendant at the apartment's door.

Defendant claimed that he and the victim had recently "broken up," and that he was just in the apartment to retrieve his personal belongings. Defendant did not know where the victim was, but he refused to let Sergeant Lawrence and Officer Kubrak inside the apartment because there was a "sick dog inside" it. Sergeant Lawrence then shined his flashlight on defendant, and he noticed that defendant had red stains on his shirt and "all up and down on his jeans on both legs." Sergeant Lawrence informed defendant that they were no longer "asking" to go inside the apartment to check on the victim's welfare, and Sergeant Lawrence then asked defendant what his name was. According to Sergeant Lawrence, defendant replied, "I'm not gonna [sic] tell you my name."

Ultimately, Sergeant Lawrence told defendant to "put his hands behind his back," and Officer Kubrak handcuffed defendant and walked defendant to Officer Kubrak's patrol car. After additional police officers arrived, Officer Kubrak, Sergeant Lawrence, and two other police officers searched the apartment for the victim, and "the first thing that [Officer Kubrak] notice[d] was a heavy odor of bleach." Similarly, Sergeant Lawrence also noticed a heavy smell of fresh bleach when he entered the apartment.

Officer Kubrak saw that the "white substance in the hallway," which was previously uncovered, "had been covered with a blanket at some point." Officer Kubrak continued searching the apartment, and inside the bedroom he saw a "severed human finger" on the carpet that he believed belonged to "a female" because "it had a long fingernail." Officer Kubrak communicated his discovery to the other police officers, and he continued to search the apartment. Ultimately, Officer Kubrak discovered the victim's body in a common storage area outside the apartment, and he saw "a human leg sticking out of" a blue plastic "tote" in the kitchen which was also full of "garbage bags."

Thus, the police officers entered the apartment to determine whether the victim was inside the apartment and in need of assistance based on the welfare check request they received from the victim's "boss." Their need to check on the victim's welfare was emphasized by the fact that the victim's car was parked outside the apartment, as well as the red stain with white foam they saw inside the apartment, defendant's peculiar explanation for why he refused to let them enter the apartment, and the red stains on defendant's shirt and pants.

" '[T]he needs of law enforcement or the demands of public safety' would not be met in this case if we were 'to require officers to walk away from a situation like the one they encountered here.' " *Lemons*, 299 Mich App at 549, quoting *Michigan v Fisher*, 558 US 45, 49; 130 S Ct 546; 175 L Ed 2d 410 (2009) (alteration in original). And as explained by this Court in a similar context in *Lemons*, where police officers were dispatched to investigate a condominium that had its door open and blowing in the wind:

[T]here was a very real possibility that someone could have been inside who needed police assistance. In such a scenario, there would be consternation in the community if the officers turned and left the residence without further investigation. In such a situation, the criticism of the officers would be justified, as the public relies on the police to help in emergencies. Outrage with such a scenario would be further proof that the police officers acted reasonably in entering the condominium in this case. [*Lemons*, 299 Mich App at 549.]

Similarly, it was very possible that the victim was inside the apartment and in need of immediate police assistance, and therefore, it was reasonable for the police officers to enter the victim's apartment. Therefore, defendant's trial counsel was under no obligation to raise this contention, as she had no obligation to raise meritless arguments.

Regardless, even when assuming, arguendo, that defendant's statements should have been suppressed, defendant has still failed to demonstrate that the suppression of his statements would have likely resulted in a different outcome during trial. There was overwhelming evidence of defendant's guilt: defendant was inside the victim's apartment immediately before her mutilated body was discovered by the police, he was wearing pants that contained blood that matched the victim's DNA profile, and both his and the victim's DNA was found on the handle of an electric reciprocating saw within the apartment, the blade of which contained blood that matched the victim's DNA profile. Therefore, defendant's contention is without merit.

Defendant next challenges the reasonableness of his sentence for second-degree murder and he also contends that his sentence was a "de facto life sentence" in violation of the 1963 Michigan Constitution's prohibition against cruel or unusual punishments. We disagree.

Generally, an issue is preserved for appellate review when it is raised before and addressed and decided by a trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), citing *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Defendant did not contend in the trial court that his sentence was cruel or unusual under the 1963 Michigan Constitution. Therefore, that contention is unpreserved.

This Court reviews a departure sentence imposed by a trial court for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). Thus, "the relevant question for appellate courts reviewing a sentence for reasonableness [is] whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id.*

The Michigan Supreme Court examined the principle of proportionality in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), overruled on other grounds by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). Under *Milbourn*, "a given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. Under this standard, the sentencing guidelines " 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts must

consult and take into account when sentencing[.]" *Steanhouse*, 500 Mich at 474-475 (quotation marks and citations omitted). However, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Milbourn*, 435 Mich at 661.

Generally, "[t]his Court reviews constitutional questions de novo." *People v Dipiazza*, 286 Mich App 137, 144; 778 NW2d 264 (2009), citing *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997). However, because defendant's constitutional claim is not preserved, to avoid forfeiture under the plain error rule, defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015), citing *Carines*, 460 Mich at 763.

In *Lockridge,* the Michigan Supreme Court held that Michigan's mandatory sentencing guidelines were "constitutionally deficient," and therefore, "sever[ed]" MCL 769.34(2) to the extent necessary to render the sentencing guidelines "advisory." *Lockridge*, 498 Mich at 364, 391, 399. Further, the Michigan Supreme Court held that a sentence that departed from the now advisory sentencing guidelines should be reviewed for "reasonableness." *Id.* at 365, citing *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

This Court held in *Steanhouse* that a sentence is reasonable if it "fulfills the principle of proportionality under *Milbourn*, and its progeny[.]" *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015), rev'd in part on other grounds 500 Mich 453 (2017). The Michigan Supreme Court subsequently affirmed that holding. *Steanhouse*, 500 Mich at 471. Under *Milbourn*, trial courts were "required to impose a sentence that took 'into account the nature of the offense and the background of the offender.' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 651. *Milbourn* also offered additional guidance for the review of a departure sentence:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*Milbourn*, 435 Mich at 659-660 (footnote omitted).]

Additionally, *Steanhouse* provided factors that were considered under the principle of proportionality, and these factors included: "(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while

in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Steanhouse*, 313 Mich App at 47-48 (citations omitted).

During sentencing, the trial judge noted that defendant's minimum recommended sentencing guidelines range was 225 to 375 months' imprisonment, and that it was considering a number of factors when he "was fashioning a reasonable sentence." The trial judge observed that, regarding "the nature and seriousness of the offense," "that this [was] by far the most savage and brutal beating in a domestic relationship that I have presided over." He explained that the victim had suffered multiple injuries before her death and dismemberment, including multiple contusions, abrasions, injuries to her face and forehead, a complete fracture of her jaw, "petechial injury" to her kidney, injuries to "each layer of [her] brain," subarachnoid hemorrhaging, and "extensive hemorrhaging around the neck where the defendant strangled the victim."

The trial judge also considered defendant's "long-term boyfriend and girlfriend relationship" with the victim, where the victim had just told defendant that she "was putting him out at the end of the month." Thus, the trial judge explained that defendant's relationship with the victim was "being considered in how the defendant exploited it." He also explained that there were "a number of factors that are not considered by the guidelines, including a 1988 conviction for attempted larceny in a building" for which defendant was "given services and an opportunity to conform his conduct." Thus, the trial court noted that while that conviction was not considered by the sentencing guidelines, that fact was "indicative of a person who's been given a chance to change his life and did not take advantage of it."

Additionally, the trial judge explained that "in terms of the commission of the offense," defendant's conduct "immediately following the murder also demonstrates that guideline minimum range does not offer a reasonable sentence." The trial judge noted that defendant decided to use an electric reciprocating saw to dismember the victim "in an attempt to get rid of the body," and that defendant "shoved the arms he had sawed off and the legs he had sawed off and stuffed them into plastic totes" in order to evade discovery when he moved the victim's body and his personal possessions out of the apartment. He explained that "this conduct" demonstrated "such of an indifference to human life that I do not believe the defendant is capable of conforming his behavior to the laws and norms of a civilized society."

Ultimately, the trial judge noted that defendant had made "no expression of remorse." Rather, the trial judge observed that "immediately following [defendant's] arrest in the back seat of the patrol car he was observed laughing about what he had done and mumbling well at least I'll get three meals a day; in prison presumably."

Therefore, the trial judge concluded that, "in light of all those factors," he found the guidelines range did not provide a "reasonable sentence." Instead, the trial court sentenced defendant to 50 to 80 years' imprisonment for the second-degree murder conviction, and 6 to 10 years' imprisonment for the mutilation of a human body conviction.

Defendant contends that the trial court's "subjective analysis" was an inadequate basis for his sentence pursuant to the holding in *People v Fields*, 448 Mich 58, 67-69; 528 NW2d 176 (1995), which required trial court judges to engage in "objective and verifiable" analysis when

determining whether there were "substantial and compelling reasons" to depart from a defendant's recommended minimum sentencing guidelines range. However, a trial court is not obliged to articulate "substantial and compelling reasons" to depart from the sentencing guidelines range. *Lockridge*, 498 Mich at 391-392. Therefore, defendant's contention is without merit.

Defendant also observes, in a cursory fashion, that the trial judge's belief that defendant was not capable of conforming his behavior to the laws and norms of society belied defendant's "relatively insignificant criminal history." However, as discussed above, the trial court's belief was based largely on defendant's conduct during and after the victim's murder, and not defendant's criminal history.

Defendant alternatively contends that "a minimum sentence within the sentencing guidelines range would have been sufficient" because defendant is a "45 year-old man." In support of this contention, defendant relies on the holding of the United States Court of Appeals for the Sixth Circuit in *United States v Payton*, 754 F3d 375, 378-379 (CA 6, 2014), where the defendant's sentence was vacated and remanded for resentencing because the trial court failed to respond to the defendant's contention that society would only minimally benefit from a 20-year upward departure from the defendant's Federal Sentencing Guidelines range sentence where the defendant would be released at age 68, as the trial court did not specifically explain why it found that the defendant would still pose a high risk of recidivism at an advanced age. Defendant's contention is flawed.

"While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Woodard*, ___ Mich App ___, ___ n 2; ___ NW2d ___ (2017) (Docket No. 336512); slip op at 4 n 2, citing *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011). Defendant's reliance on *Payton* is misplaced, because the federal appellate courts review the sentences of a criminal defendant under a distinct standard of review that is inapplicable here. See *Steanhouse*, 313 Mich App at 42-43 (explaining the standard of review applied by federal courts when reviewing the sentence of a criminal defendant). As the basis of the holding in *Payton* is that the sentencing court's sentence was substantively unreasonable under the federal standard of review, there is no reason to further consider that holding.

Defendant also contends that his sentence of 600 months' imprisonment violates the prohibition on cruel or unusual punishments found in the 1963 Michigan Constitution. Const 1963, art 3, § 16. He asserts that his sentence is excessively lengthy because it is a "de facto" life sentence, and thus, it is a cruel or unusual sentence as prohibited by the 1963 Michigan Constitution. Defendant's contention is without merit.

"[U]nder the Michigan Constitution, the prohibition against cruel or unusual punishment include[s] a prohibition on grossly disproportionate sentences." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011), citing *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). "[W]hether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in

other states." *Benton*, 294 Mich App at 204, citing *Bullock*, 440 Mich at 33-34. However, " 'the constitutional concept of "proportionality" under Const 1963, art 1, § 16 is distinct from the nonconstitutional "principle of proportionality" discussed in [*Milbourn*], although the concepts share common roots.' " *Benton*, 294 Mich App at 204, quoting *Bullock* 440 Mich at 34 n 17.

Defendant has abandoned this contention on appeal. Defendant has failed to provide a comparison of the penalty for second-degree murder to penalties for other crimes under Michigan law, and he has also failed to provide a comparison between Michigan's penalty for second-degree murder to the penalties for second-degree murder imposed by other states. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority." *Clark*, 315 Mich App at 234 (quotation marks and citation omitted). Therefore, defendant has failed to carry his burden to demonstrate that he received a cruel or unusual sentence.

Regardless, defendant notes that he is currently 45 years old, and he cursorily contends that his "de facto life sentence" of 50 years' imprisonment violates the prohibition on cruel or unusual sentences under the 1963 Michigan Constitution because the trial court sentenced him as if he were convicted of first-degree murder. However, under MCL 750.317, a defendant convicted of second-degree murder "shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same." Therefore, even though the trial court could have sentenced defendant to life, it elected to only sentence defendant to a term of years as authorized by MCL 750.317.

With regards to defendant's argument that he received a "de facto" life sentence, defendant notes that he is 45 years old, and that he has been sentenced to a minimum sentence of 50 years' imprisonment. The implication of defendant's argument appears to be that he will not live long enough to be paroled because he will most likely spend the remainder of his life in prison. However, a defendant is not necessarily entitled to parole. See *People v Merriweather*, 447 Mich 799, 809; 527 NW2d 460 (1994) ("We find no basis, however, to conclude that the Legislature intended that all defendants, or even simply this defendant, must be eligible for parole).

Affirmed.


/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens